## SUPREME COURT.

### DAVID BANKS agt. PETER VAN ANTWERP and wife.

In an action to foreclose a mortgage of $3,000, after nine years of regular payment of interest, the defendant interposed the defence of *usury* on this wise : That the bond and mortgage were dated on the 1st of August, 1846, but were not, in fact executed, nor the principal sum of money borrowed, received by defendant, until the 24th of August aforesaid ; and that the plaintiff did thereby reserve to himself, for the loan, fourteen dollars above the lawful rate.

The question was, whether such a transaction (the money, probably, during the time, being set apart in bank for the loan), one of every day occurrence, not in Wall street, but among legal conveyancers, constituted in law a misdemeanor, or in other words, usury.

*Held*, that the legislature of 1837, whatever may have been their views of public policy, did not intend to enact an absurdity, not to say atrocity, such as the present defence implied. Judgment for plaintiff, with costs.

*New-York Special Term, November*, 1857.

ACTION commenced for the foreclosure of a mortgage, to which was interposed the plea of usury ; which the answer declared consisted in the following state of facts : That V. A.,

the mortgagor, had signed and executed the bond and mort-
gage on the first day of August, but that the money borrowed
was not received by him until the 24th of August; upon
which plaintiff moved for judgment on account of the frivo-
lousness of the answer.

FRANCIS S. BANKS & E. ELLERY ANDERSON, *for pl'ff.*
S. D. JAMES, *for defendants.*

ROOSEVELT, Justice.   Usury, as a defence, standing upon the
same footing, in principle, as an action for the recovery of a
penalty or forfeiture, the party setting it up must aver, clearly,
every particular necessary to such a recovery, and must dis-
tinctly negative every supposable fact, which if true, would
render the transaction innocent or lawful.   In the present case
the defendants allege that the mortgage sought to be fore-
closed, although dated on the first of the month, was not, in
fact, executed until the 24th of August, 1846: that it was
made to secure the principal sum of $3,000, loaned to the de-
fendant Van Antwerp, on the 24th of August, 1846: that it
was so dated on the first of the month for the purpose of re-
serving a greater rate of interest than seven per cent.; and
that the plaintiff did thereby reserve to himself, for the loan,
fourteen dollars above the lawful rate.

There is no averment, it will be observed, that the fourteen
dollars, which constitute the grievance of the offence charged,
were ever exacted, or paid, and no interest is now claimed as
due for the nine years prior to 1855.   The defendants, in ef-
fect, admit that the eighteen installments of interest, whatever
they were, accruing prior to that day, were satisfactorily ar-
ranged and paid.   The idea of a recovery, therefore, is clearly
an after thought, and savors strongly of the nature of what
the law denominates " *stale demand,*" and which the courts,
especially when sitting in equity, invariably discharge.   Be-
sides, the defendants' answer, so far as it alleges facts, and
not inferences, may be perfectly true, and yet the loan may
have been, as it possibly was, engaged, and the money actu-

ally set apart in bank in the first days of the month, the intermediate three weeks being devoted to the preparation of the papers and the examination of the title. The question then is, does such a transaction—one of every day occurrence—not on Wall street, but among legal conveyancers—constitute in law a misdemeanor? for the same statute, the one passed in 1837, which is invoked to make it void as a contract, if applicable, equally makes it punishable with fine and imprisonment, as a criminal offence. In other words, the act done, if void, is for the same reason criminal; and if not criminal, is for the same reason not void. Can any one, then, I repeat, imagine that the legislature intended that dating a bond on the day of the loan was to be punished with imprisonment, if the money, although actually engaged, and actually in, and kept in bank, was not actually paid over till the expiration of the usual time allowed or required for the examination of the borrower's title? and that the offence, then, was to be deemed of such a heinous character that, unlike other cases of penalty and forfeiture, which are required to be prosecuted (if at all) within three years, this may, in effect, be prosecuted within nine or even ninety years after alleged commission? It is the practice, I am aware, to underrate the intelligence and good sense of our legislative bodies. The practice, however, has been considered as demonstrating neither the good sense nor the intelligence—certainly not the good taste—of those who indulge in it; courts, at all events, may be excused for not pursuing it.

I shall assume, therefore, until otherwise instructed, that the legislature of 1837, whatever may have been their views of public policy, did not intend to enact an absurdity, not to say atrocity, such as the present defence implies.

Judgment for the plaintiff, with costs.